**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY and NORTHERN INSURANCE COMPANY OF NEW YORK<br>1400 American Lane<br>Schaumburg, Il 60196<br><br>*Plaintiffs,*<br>v.<br><br>R.M. SHOEMAKER CO.<br>100 S. Front Street, 13th Floor<br>West Conshohocken, PA 19482<br><br>and<br><br>COUNTY OF MONMOUTH<br>Hall of Records<br>Main Street<br>Freehold, NJ 07728<br><br>*Defendants* | CIVIL ACTION<br><br>NO. ________________<br><br>[This Document has been Electronically Filed] |

**COMPLAINT**

AND NOW COMES the plaintiffs, Zurich American Insurance Company and Northern Insurance Company of New York, by and through their attorneys, Bodell, Bove, Grace & Van Horn, P.C., to file this Complaint against the defendants, R.M. Shoemaker Co. and the County of Monmouth, and in support thereof, avers the following:

**NATURE OF THE ACTION**

This is an action for declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202, for the purposes of determining questions of actual controversy between the parties and construing the rights and legal relations, if any, arising from a series of liability insurance agreements issued by Northern Insurance Company of New York ("Northern") and Zurich American Insurance Company

("Zurich") to R.M. Shoemaker ("Shoemaker") in connection with a the civil action styled as, *County of Monmouth v. R.M. Shoemaker Co. et al.*, Sup. Ct. (Law Div.) Monmouth County No. MON-L-1204-04 ("Underlying Suit").

**PARTIES**

1. Plaintiff, Zurich American Insurance Company ("Zurich") is a New York corporation engaged in the business of insurance with a statutory home office located at One Liberty Plaza, 165 Broadway, 32nd Floor, New York, New York 10006, and its principal place of business located at 1400 American Lane, Schaumburg, Illinois 60196. Zurich is, and at all relevant times was, duly authorized to do business in the Commonwealth of Pennsylvania and did, in fact, conduct such insurance business in the Commonwealth of Pennsylvania which is the subject of the claims for declaratory and monetary relief advanced herein.

2. Plaintiff, Northern Insurance Company of New York ("Northern") is a New York corporation engaged in the business of insurance with a statutory home office located at One Liberty Plaza, 165 Broadway, 32nd Floor, New York, New York 10006, and its principal place of business located at 1400 American Lane, Schaumburg, Illinois 60196. Northern is, and at all relevant times was, duly authorized to do business in the Commonwealth of Pennsylvania and did, in fact, conduct such insurance business in the Commonwealth of Pennsylvania which is the subject of the claims for declaratory and monetary relief advanced herein.

3. Defendant, R.M. Shoemaker ("Shoemaker") is a Pennsylvania Corporation with its principal place of business located in Conshohocken, Pennsylvania at the above captioned address. As part of its business activities in the Commonwealth of Pennsylvania, Shoemaker negotiated and

purchased, through its Pennsylvania based insurance broker and agent, the policies of insurance at issue in this case.

4. At all times referenced herein, Shoemaker acted by and through its respective duly authorized officers, directors, employees and agents.

5. Defendant, County of Monmouth, is, upon information and belief, is a body corporate of the State of New Jersey with its principal place of business located in Freehold, New Jersey at the above captioned address. No claim for relief is being asserted in this action against the County of Monmouth and it is named as a nominal defendant only.

**JURISDICTION AND VENUE**

6. This court has original jurisdiction under 28 U.S.C. §1332, in that this is a civil action between citizens of different states in which the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

7. Venue is proper in the Eastern District of Pennsylvania under 28 U.S.C. §1391 because, *inter alia*, a substantial part of the events or omissions giving rise to the claim, including the insurance business transactions exclusively at issue in this case, took place in this District.

**THE NORTHERN AND ZURICH POLICIES**

8. Northern issued two (2) commercial general liability insurance policies to Shoemaker, effective September 30, 2000 to September 30, 2002, each with a "per occurrence" limit of $1,000,000, identified more specifically as Northern Insurance Company of New York Policy No. CON86230027 ("Northern Policies"). True and correct copies of the Northern Policies are attached hereto and marked as Exhibits "A" and "B".

9. Zurich issued two (2) commercial general liability insurance policies to Shoemaker, effective September 30, 2002 to September 30, 2004, each with a "per occurrence" limit of $1,000,000, identified more specifically as Zurich American Insurance Company Policy Nos. GLO9306400-00 and GLO9306400-01, respectively ("Zurich Policies"). True and correct copies of the Zurich Policies are attached hereto and marked as Exhibits "C" and "D".

10. The Northern Policies and the Zurich Policies were underwritten in Pennsylvania, and negotiated, produced and delivered to Shoemaker in Pennsylvania by Shoemaker's authorized agent and insurance broker, The Graham Company, a Philadelphia-based insurance broker.

11. In pertinent part, the Northern Policies and the Zurich Policies contain the following language in the insuring agreement:

> SECTION I - COVERAGES
> COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY
> 1. Insuring Agreement
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. ...
>
> ...
>
> b. This insurance applies to "bodily injury" and "property damage" only if:
>
> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
> (2) The "bodily injury" or "property damage" occurs during the policy period;
>
> (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II - Who is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such

"bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage'; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

...

See Northern Policies at Commercial General Liability Coverage Form 801402 (3-96) *as amended by* Amendment of Insuring Agreement – Known Injury or Damage Endorsement CG 0057 (09/99), Zurich Policies at Commercial General Liability Coverage Form CG 0001 (10/01).

12. The Northern Policies and the Zurich Policies are subject to the following provision respecting two or more policies:

**Two Or More Coverage Forms or Policies Issued By Us**

> If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same "occurrence," the maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or Policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

See Northern Policies at Commercial General Liability Coverage Form 801402 (3-96), Section IV.¶11, Zurich Policies at Commercial General Liability Coverage Form CG 0001 (10/01) Section IV *as amended by* Contractors Liability Endorsement (U-GL-1060-A CW (05/02)).

13. Northern is a wholly owned subsidiary of Maryland Casualty Company, a Maryland corporation. Maryland Casualty Company is a wholly owned subsidiary of Zurich. See Corporate Disclosures of Northern and Zurich filed contemporaneously with this Complaint, which are incorporated herein by reference. Northern and Zurich are "affiliated" companies within the meaning of the "Two Or More Coverage Forms or Policies Issued By Us" provisions in the Zurich Policies and the Northern Policies.

14. The Northern Policies and the Zurich Policies contain various exclusions, limitations and conditions precedent to coverage, as set forth more fully in those policies, all of which are incorporated herein by reference.

## THE UNDERLYING SUIT

15. On or about March 12, 2004, the County of Monmouth (the "County") filed a civil action against, *inter alia*, Shoemaker styled as *County of Monmouth v. R.M. Shoemaker Co. et al.*, Sup. Ct. (Law Div.) Monmouth County No. MON-L-1204-04 ("Underlying Suit").

16. In the Underlying Suit, the County alleges that Shoemaker entered into a certain "Construction Contract" for the construction of a two-phase addition to the Monmouth County

Correctional Institution ("MCCI") for a total original contract amount of $37,215,500 (the "Project"). *See* Sixth Amended Complaint ("Compl.") filed in the Underlying Suit, attached as Exhibit "E," at ¶¶ 23, 28.

17. In the Underlying Suit, the County alleges that Shoemaker breached the "Construction Contract" by virtue of "omissions, defects and deficiencies in the labor, materials and work provided by Shoemaker to the County." Compl. at ¶¶38-41.

18. In the Underlying Suit, the County seeks damages for the direct, proximate and foreseeable consequences of Shoemaker's breach of the Construction Contract, Shoemaker's breach of implied contractual obligations and undertakings arising out of that Construction Contract to perform its work in a "good and workmanlike manner," and Shoemaker's gross and wilful deviations from the requirements of the Construction Contract. Compl. at ¶¶43, 46-47, 73-74.

19. All of the liability claims advanced against Shoemaker in the Underlying Suit arise out of the duties and obligations imposed under the Construction Contract.

20. In the Underlying Suit, the County claims that the omissions, defects and deficiencies in Shoemaker's work under the Construction Contract have caused or contributed materially to "cracking and displacement of the wall veneers [and] other significant structural defects and property damage," the discrete and cumulative effects of which has caused "leakage and other water infiltrations throughout the project" resulting in "material reductions in the structural strength and integrity of the masonry systems throughout the project areas at the MCCI," the danger of disintegration and collapse to persons and property, and "physical damages to the interior, non-structural, building systems at the MCCI," including "damages to the electrical systems, the suspended acoustic tile ceilings and miscellaneous equipment." Compl. at ¶40.

21. All of the County's claims for monetary relief arise out of damage to the work which was the subject of the Construction Contract (*i.e.*, to the Project itself) and supposed damage to other interior, non-structural, building systems at the MCCI which was the natural, foreseeable or expected result of the alleged breach of the Construction Contract.

22. The Project is alleged to have been substantially completed by Shoemaker on June 20, 1994, and a Certificate of Occupancy was issued on September 12, 1994. Compl. at ¶¶32 and 34.

23. The County alleges that it became aware of "persistent water infiltration," which it describes as a "known consequence" of defective work, Compl. at ¶125, prior to September, 1996, when the County brought the problem to the attention of the architect for the Project, *id.* at ¶180.

24. The County alleges that remedial efforts undertaken in 1996 did not correct the "water infiltration problem." Compl. at ¶180; *and see* County's Answers to Defendant R.M. Shoemaker Co.'s Interrogatories, attached as Exhibit "F," at ¶22 (asserting that the County first became aware of water infiltration problem in February of 1995, performed various tests on the roofs and windows in June of 1996, and took corrective action).

25. The damages claimed by the County in the Underlying Suit first manifested prior to the effective dates of coverage of the Northern and Zurich Policies.

**DEFENSE OF THE UNDERLYING SUIT**

26. On or about April 26, 2004, Northern was notified of the Underlying Suit and a tender was advanced under cover of April 27, 2004 on behalf of Shoemaker.

27. On May 4, 2004, Northern agreed to defend Shoemaker under a full reservation of rights to later disclaim any duty to defend or indemnify under the Northern Policies and/or Zurich Policies.

28. On September 29, 2005, Shoemaker filed a Chapter 7 petition in this Court at U.S. Bankruptcy Court, Eastern District of Pennsylvania (Philadelphia), Bankruptcy Petition No. 05-33558-elf ("Bankruptcy Proceeding").

29. The County subsequently entered its appearance in the Bankruptcy Proceeding and petitioned this Court for relief from the automatic stay occasioned by the Chapter 7 petition. On May 12, 2006, an Order was entered permitting the County to proceed with the Underlying Suit against the debtor in order to obtain a judicial determination of the debtor's liability, if any, and the amount of any such liability.

30. Northern has continued to defend Shoemaker in the Underlying Suit pursuant to a full reservation of rights.

31. On June 6, 2011, the Bankruptcy Proceeding was terminated.

**COUNT I**
**Northern and Zurich v. Shoemaker**
**(Declaratory Judgment)**

32. Northern Insurance Company of New York and Zurich American Insurance Company incorporate by reference each of the foregoing allegations as if the same were set forth herein at length.

33. Northern and Zurich are under no obligation to defend or indemnify Shoemaker with respect to the Underlying Suit pursuant to the terms, conditions, provisions, and exclusions of the Zurich Polices and the Northern Policies as follows:

(a) The claims as pled in the Underlying Suit do not qualify as a triggering "occurrence" because they exclusively address faulty workmanship which caused foreseeable harm.

(b) Coverage is under the polices is otherwise barred because the injury or damage alleged in the Underlying Suit was not caused by an "occurrence."

(c) The claims as pled in the Underlying Suit do not seek damages because of "property damage" caused by an "occurrence" which occurred during the effective dates of coverage of the policies.

(d) Coverage under the polices is barred because the claims advanced in the Underlying Suit arise solely from a contractual relationship between the parties, the alleged duties breached were based on the contract itself, and any liability of Shoemaker stems from the contract.

(e) Coverage under the polices is otherwise barred because any purported tort based claim in the Underlying Suit essentially duplicates the breach of contract claim or is otherwise is dependent on the success of the breach of contract claim.

(f) Coverage under the polices is otherwise barred because the Underlying Suit does not involve or otherwise constitute a claim or claims for "property damage" as defined by the policies.

(g) Coverage under the polices is barred to the extent the allegations of the Underlying Suit describe injury, damage or an occurrence that occurred outside the effective dates of coverage.

(h) Coverage under the polices is barred because the injurious effects of the faulty workmanship first manifested themselves prior to the effective dates of coverage. The County discovered and documented all or part of the alleged "property damage" which is the subject of its claims in the Underlying Suit, prior to the effective dates of coverage under the policies.

(i) The claims advanced against Shoemaker in the Underlying Suit are based on a continuation, change or resumption of such "property damage" which occurred and/or was known prior to the effective date of the policies. Shoemaker, upon information and belief, was aware that "property damage" as alleged in the Underlying Suit had occurred or had begun to occur prior to the effective date of the policies. Coverage under the polices is barred to the extent that any insured or employee of the insured authorized to give or receive notice of an "occurrence" or claim, knew that the alleged "property damage" had occurred, in whole or in part, prior to the effective dates of coverage.

(j) Under prevailing law, if property damage occurred before or was in progress at the time of the commencement of the Northern Policies or the Zurich Policies, coverage under the Northern Policies and the Zurich Policies is not available as a matter of law and public policy. *Rohm and Haas Co. v. Cont'l Cas. Co.*, 566 Pa. 464, 474 (2001).

(k) Coverage under the polices is barred by application of the contractual liability exclusion in the policies.

(l) Coverage under the polices is barred to the extent the Underlying Suit arises out of the liability of others that has been assumed by contract or agreement other than as specified in the policies.

(m) Coverage under the polices is barred to the extent that any insured expected or intended any injury or damage at issue in the Underlying Suit.

(n) Coverage under the polices is barred by application of the "Damage to Property," "Damage to Your Product," "Damage to Your Work," "Damage to Impaired Property or Property not Physically Injured," and/or "Recall of Products, Work or Impaired Property" exclusions in the policies.

(o) Coverage under the polices is limited by application of the various limitations on coverage, including without limitation, the following provisions: (i) limits of liability; (ii) each "occurrence" limits; (iii) aggregate limits; and (iv) deductibles.

(p) For purposes of determining the limit of liability, all "property damage" arising out of continuous or repeated exposure to substantially the same general harmful conditions shall be considered as arising out of one "occurrence."

(q) Coverage under the polices is limited by the "Two Or More Coverage Forms or Policies Issued By Us" provisions of the policies. To the extent Northern or Zurich is determined to have any duty to reimburse or indemnify Shoemaker for any injury or damage or loss under more than one of the policies issued by Northern or Zurich, the maximum amount that Northern or Zurich will pay under all policies combined is the highest limit that applies in any one policy.

(r) Coverage under the polices is limited by the "Other Insurance" provisions of the policies.

(s) Northern and Zurich reserve the right to allocate or reallocate liability (if any liability exists) to other insurers and Shoemaker for uninsured or self-insured periods or periods not insured by Northern or Zurich.

(t) The Underlying Suit includes claims for recovery of punitive or exemplary damages. The Northern Policies and the Zurich Policies do not provide coverage for such damages as a matter of public policy.

(u) Coverage under the polices is barred to the extent that Shoemaker has failed to perform all obligations required of it under the policies.

(v) There is no coverage under the polices to the extent Shoemaker's acts or omissions which give rise to the Underlying Suit were in violation of law or public policy.

34. On information and belief, Shoemaker disputes the various contract provisions and defenses to coverage set forth in the preceding paragraph.

35. There exists a substantial, *bona fide*, actual and justiciable dispute regarding the application and interpretation of certain terms of the Zurich Policies and the Northern Policies in connection with Shoemaker's claim for coverage with regard to the Underlying Suit.

36. As a result of this current controversy, Northern and Zurich are entitled to a declaration that they have no duty to defend or indemnify Shoemaker in the Underlying Suit. There is no adequate remedy, other than that requested herein, by which this controversy may be resolved.

**WHEREFORE,** Plaintiffs, Northern Insurance Company of New York and Zurich American Insurance Company, respectfully request that this Honorable Court enter:

(1) An Order declaring that Northern Insurance Company of New York has no duty to defend or indemnify R.M. Shoemaker Co. in the civil action styled as, *County of Monmouth v. R.M. Shoemaker Co. et al.*, Sup. Ct. (Law Div.) Monmouth County No. MON-L-1204-04 under Northern Insurance Company of New York Policy No. CON86230027, effective September 30, 2000 to September 30, 2002;

(2) An Order declaring that Zurich American Insurance Company has no duty to defend or indemnify R.M. Shoemaker Co. in the civil action styled as, *County of Monmouth v. R.M. Shoemaker Co. et al.*, Sup. Ct. (Law Div.) Monmouth County No. MON-L-1204-04 under Zurich American Insurance Company Policy Nos. GLO9306400-00, effective September 30, 2002 to September 30, 2003, and GLO9306400-01, effective September 30, 2003 to September 30, 2004, or subsequent renewal thereof;

(3) An Order in the alternative declaring that Northern Insurance Company of New York and Zurich American Insurance Company have no duty to indemnify R.M. Shoemaker Co. for all or that portion of any adverse judgment entered against R.M. Shoemaker Co. in the civil action styled as, *County of Monmouth v. R.M. Shoemaker Co. et al.*, Sup. Ct. (Law Div.) Monmouth County No. MON-L-1204-04 for which there is no coverage under Northern Insurance Company of New York Policy No. CON86230027, effective September 30, 2000 to September 30, 2002, Zurich American Insurance Company Policy Nos. GLO9306400-00, effective September 30, 2002 to September 30, 2003, and GLO9306400-01, effective September 30, 2003 to September 30, 2004, or subsequent renewal thereof; and

(4) A Judgment and/or Order for such other relief consistent with the claims and causes asserted in this Complaint.

**CERTIFICATION**

The undersigned hereby certifies that, on information and belief, the matters at issue in this action are the subject of another action pending in this court, styled as *Zurich American Insurance Company and Northern Insurance Company of New York v. R.M. Shoemaker Co. and Pennsylvania Manufacturers Association Insurance Company and County of Monmouth*, United States District Court, Eastern District of Pa., Case No. 11-cv-3963.

**JURY DEMAND**

Please take notice that Northern Insurance Company of New York and Zurich American Insurance Company hereby demand a trial by jury as to all triable issues.

Respectfully Submitted,

/s/Louis A. Bové

Louis A. Bové, Esquire
PA 53071
**BODELL, BOVE, GRACE & VAN HORN, P.C.**
One Penn Square West, 6th Fl.
30 S. 15th Street
Philadelphia, PA 19102
Tel: (215) 864-6600
Fax:(215) 864-6610
lbove@bodellbove.com
*Attorney(s) for Plaintiffs,*
*Zurich American Insurance Company and*
*Northern Insurance Company of New York*

Date: February 21, 2012